IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRESSA Y. DOUCET, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 15-cv-2115-B-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Tressa Y. Doucet seeks judicial review of a final adverse decision of the
Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons
explained below, the hearing decision should be reversed and remanded.

**Background**

Plaintiff alleges that she is disabled due to depression, intellectual disability,
panic attacks, hypertension, and headaches. *See* Administrative Record, Dkt. No. 10
("Tr.") at 15. After her applications for disability insurance benefits and supplemental
security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff
requested a hearing before an administrative law judge ("ALJ"). *See id*. at 82-83. That
hearing was held on October 10, 2013. *See id*. at 24. At the time of the hearing,
Plaintiff was thirty-nine years old. *See id*. at 17. She completed high school through
special education course work. *See id*. at 13. Plaintiff has past work experience as a

cafeteria counter worker. *See id.* at 52. Plaintiff has not engaged in substantial gainful activity since March 22, 2005. *See id.* at 11

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from borderline intellectual functioning and major depressive disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 11-14. The ALJ further determined that Plaintiff was unable to perform any past relevant work but had the residual functional capacity to perform a full range of work at all exertional levels, but with non-exertional limitations like avoiding exposure to hazardous moving machinery and unprotected heights, and could not drive or operate motor vehicles. *See id.* at 14-17. The ALJ also found that Plaintiff could perform simple three-step tasks in a routine work setting and sustain sufficient attention/concentration to complete such tasks on a regular and continuing basis with a short demonstration. *See id.* The ALJ also found that Plaintiff's mental functioning correlated to Math and Language levels 1-1 in the Dictionary of Occupational Titles. *See id.*

Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a cleaner housekeeper, bakery worker conveyor line, and a lens inspector – jobs that exist in significant numbers in the national economy. *See id.* at 18. Given her age, education, and exertional capacity for work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines. *See id.*

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff contends that the hearing decision is not supported by substantial evidence and results from reversible legal error. More particularly, Plaintiff argues that the ALJ (1) failed to consider the functional limitations when she assessed Plaintiff's residual functional capacity and (2) improperly evaluated the opinions of her treating psychiatrist. *See* Dkt. No. 14

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain

whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.    If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.    If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in

appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to

fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Among the arguments that Plaintiff makes is a single ground that compels remand – the ALJ's decision to give little weight to the opinions of her treating psychiatrist, Dr. Ikechukwu R. Ofomata, without requisite explanation.[1]

The opinion of a treating physician, like Dr. Ofomata, who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez*, 64 F.3d at 175-76 (citing 20 C.F.R. § 404.1527(c)(2)). And "[t]he opinion of a specialist generally is accorded greater

---

[1] By recommending remand of this case for further administrative proceedings, the undersigned does not suggest that Plaintiff is or should be found disabled.

weight than that of a non-specialist." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Id*. at 455-56 (internal quotations omitted). Further, the ALJ may assign treating physicians' opinions little or no weight when good cause is shown. *See id*. An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 456.

20 C.F.R. § 404.1527(c)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that [the opinion] is not entitled to 'controlling weight.'" *Id*. Specifically, the ALJ must consider: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R. § 404.1527(c)(2); *see also Newton*, 209 F.3d at 456. The ALJ must consider all six of the Section 404.1527(c)(2) factors if "controlling weight" is not given to a treating physician's medical opinions. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th

Cir. 2001); *McDonald v. Apfel*, No. 3:97-CV-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998).

In *Newton*, the United States Court of Appeals for the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[ (c) ] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. But, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

Dr. Ofomata diagnosed Plaintiff with severe and recurrent major depressive disorder with psychotic features and borderline intellectual functioning. *See* Tr. at 563. He also opined that Plaintiff had an extreme loss of ability to: (1) apply commonsense understanding to carry out simple one-step, two-step, detailed, but uninvolved, written or oral instructions; (2) demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances; (3) maintain concentration, attention, or stay on task for an extended period lasting two hours; (4) perform at a consistent pace without an unreasonable number and length of rest periods or breaks; (5) act appropriately in public; (6) make simple work-related decisions; (7) ask simple questions or request assistance; (8) accept instructions and respond appropriately to criticism from supervisors; (9) respond appropriately to changes in a routine work

setting; (10) cope with normal work stress (even those inherit in low stress jobs) without exacerbating pathologically based symptoms; and (11) finish a normal work week without interruption from psychologically based symptoms. *See id.* at 562-63. According to Dr. Ofomata, these impairments would cause Plaintiff to be absent from work more than four days a month. *See id.* at 564. Dr. Ofomata also indicated that his opinions do not conflict with any indication that Plaintiff is "stable on meds," "doing ok," or "doing well" because Plaintiff has a residual disease process that has resulted in such marginal adjustments that even a minimal increase in mental demands or change in the environment would be predicted to cause her to decompensate. *Id.*

The ALJ gave Dr. Ofomata's opinions little weight. *See id.* at 16. Instead, the ALJ relied on treatment notes that reported Plaintiff was "doing well on her meds", well groomed with a pleasant affect, and in a good mood. *Id.* at 15, 16, 531, 545. The treatment notes also indicated that Plaintiff has fair insight, judgment, and impulse control, cooperative behavior, normal attention, organized thoughts, and no psychotic features, but borderline intellectual functioning. *See id.* at 15, 16, 65, 342, 360, 531, 545. Based on these treatment notes, the ALJ found that Plaintiff had the residual functional capacity to perform simple three-step tasks in a routine work setting and sustain sufficient attention/concentration to complete such tasks on a regular and continuing basis with a short demonstration. *See id.* at 16. The ALJ also found that claimant's mental functioning correlated to Math and Language levels 1-1 in the Dictionary of Occupational Titles. *See id.*

Plaintiff contends that the ALJ erred by not considering the 20 C.F.R. § 404.1527 factors before declining to give great weight to Dr. Ofomata's opinions. *See* Dkt. No. 14 at 14-16. The Commissioner responds that the ALJ was not required to perform an analysis of the Section 404.1527 factors because Dr. Ofomata's opinions were inconsistent with other objective findings in the medical record. *See* Dkt. No. 16 at 13-14.

But the ALJ did not cite any medical evidence that shows Plaintiff was capable of performing activities that Dr. Ofomata opined that Plaintiff had lost her ability to do. Nor did the ALJ cite any medical evidence that otherwise contradicts Dr. Ofomata's opinions. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455.

Further, even though the ALJ relied on treatment notes showing that Plaintiff was, among other things, doing well and stable on medication, those findings are not inconsistent with Dr. Ofomata's opinions on Plaintiff's work limitations. *See* Tr. at 15, 16, 65, 342, 360, 531, 545, 563-564. In fact, the treatment notes appear to actually support Dr. Ofomata's opinion regarding Plaintiff's borderline intellectual functioning. *See id.* at 545.

Consequently, the ALJ impermissibly relied on her own lay opinion, derived from her interpretation of the treatment records and not that of Plaintiff's treating physician, to determine the effects of Plaintiff's mental impairments on her ability to work. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir.2003) (explaining that an ALJ "must be careful not to succumb to the temptation to play doctor" or make her own

independent medical assessments). While an ALJ may weigh competing medical opinions, *see Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir.2012), she may not substitute her lay opinion for the uncontroverted medical opinion of the treating psychiatrist who opined concerning the effects of Plaintiff's mental impairments, *see Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3rd Cir. 2000) ("The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.") (citations omitted).

The ALJ erred by granting Dr. Ofomata's opinions little weight without an analysis of the Section 404.1527 factors. Dr. Ofomata's opinions included significant mental limitations, which the ALJ even admitted would have rendered Plaintiff disabled if given great weight. *See* Tr. at 16. Therefore, the undersigned concludes that the ALJ's failure to consider the Section 404.1527 factors in connection with Dr. Ofomata's opinions was prejudicial error and recommends that this matter be reversed and remanded.

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 14, 2016

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE